Caree Harper SBN 219048
LAW OFFICES OF CAREE HARPER
100 Wilshire Blvd. Suite 700
Santa Monica, CA 90401
(213) 386-5078 Tel.
Email: *ch1@attorneyharper.com*

Attorneys for Plaintiffs:
**CARLOS TOWNS,**
**BARSHA KNOX** as Guardian *ad Litem* for Minor **"CT2"**

# UNITED STATES DISTRICT COURT
## IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CARLOS TOWNS,** **BARSHA KNOX** as Guardian *ad Litem* for Minor **"CT2"** | **Case No.: 2:23-cv-1635** |
| Plaintiffs, vs. | **COMPLAINT FOR DAMAGES** |
| **COUNTY OF LOS ANGELES, LASD DEP. CLARISSA PRENTICE, LASD DEP. ELIEZER MORALES, SHERIFF ROBERT LUNA, (FMR.) SHERIFF ALEX VILLANUEVA,** individually and in their official capacities and DOES 1-10 inclusive, Defendants.. | 1. **EXCESSIVE FORCE / CRUEL & UNUSUAL PUNISHMENT** (Per 42 U.S.C. § 1983) 2. **SUBSTANTIVE DUE PROCESS** (Per 42 U.S.C. § 1983) 3. *MONELL* **ALLEGATIONS** (Per 42 U.S.C. § 1983) 4. **CONSPIRACY** (Per 42 U.S.C. § 1985) 5. **WRONGFUL DEATH/ BATTERY** 6. **NEGLIGENCE/ WRONGFUL DEATH** 7. *BANE* **CIVIL RIGHTS ACT** (CA. Civil Code § 52.1) 8. **TORTS-IN-ESSENCE** |

///

///

Plaintiffs allege:

## INTRODUCTION.

1.     This civil rights action seeks compensatory and punitive damages from Defendants for violating various civil rights under the United States Constitution and state law in connection with the fatal use force on the decedent, **CHARLES TOWNS.**

## PARTIES

2.     **CARLOS TOWNS** is the natural son of **CHARLES TOWNS** (and **BARHSA KNOX)** and sues as successor-in-interest pursuant to California Civil Code § 377.32.

3.     **"CT2"** is a 17-year old Minor and the natural son of the Decedent, **CHARLES TOWN and BARSHA KNOX.  BARSHA KNOX** sues on her son's behalf as Guardian *ad Litem* and as successor-in-interest pursuant to California Civil Code § 377.32.

4.     At all relevant times, **CHARLES TOWNS** ("DECEDENT"), a Black man, was an individual residing in the County of Los Angeles, California.

5.     Defendant, **CLARISSA PRENTICE,** at all relevant times was and is a sworn peace officer and deputy at the **LOS ANGELES SHERIFF'S DEPARTMENT. PRENTICE** was acting under color of law within the course and scope of her duties as a deputy for the Los Angeles Sheriff's Department **("LASD")** with the complete authority and ratification of her principal, the Defendant **COUNTY**, when she shot and killed **CHARLES TOWNS**.

6.     Defendant, **ELIEZER MORALES,** at all relevant times was and is a sworn peace officer and deputy at the **LOS ANGELES SHERIFF'S DEPARTMENT. MORALES** was acting under color of law within the course and scope of his duties as a deputy for the Los Angeles Sheriff's Department **("LASD")** with the complete authority and ratification of his principal, the Defendant **COUNTY**, when he shot and killed **CHARLES TOWNS**.

7.     Defendant, **SHERIFF ROBERT LUNA**, at all relevant times, was and is a sworn peace officer, supervisor and ultimate policymaker at the **"LASD"**.

8.     Defendant, Former **SHERIFF ALEX VILLANUEVA**, at all relevant times, was a sworn peace officer, former policymaker at the **"LASD"** who engaged in the cover-up of known deputy gangs where initiations included but was not limited to executions by deputies thereby allowing deputy gangs to thrive.

9.     At all relevant times, Defendant **COUNTY OF LOS ANGELES ("COUNTY")** is and was a duly organized public entity, form unknown, existing under the laws of the State of California. At all relevant times, COUNTY was the employer of Defendants and DOES who were police officers, and DOES 1-10 who were police officer and supervisorial officers, and who were managerial, supervisorial, and policymaking employees of the COUNTY sheriff's department.

10.     At all relevant times, DOES 1-10 were duly authorized employees and agents of COUNTY, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant COUNTY or were firefighters with the complete authority and ratification of their principal, Defendant COUNTY.

11.     At all relevant times, Defendants and DOES 1-10 were duly appointed officers and/or employees or agents of the COUNTY, subject to oversight and supervision by COUNTY's elected and non- elected officials.

12.     In doing the acts and failing and omitting to act as hereinafter described, Defendants were acting on the implied and actual permission and consent of COUNTY.

13.     At all times mentioned herein, each and every COUNTY defendant was the agent COUNTY defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every COUNTY defendant.

14.     The true names of defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names.

Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

15.     Plaintiffs filed a comprehensive and timely claims for damages with COUNTY pursuant to applicable sections of the California Government Code and supplemented thereafter.

## JURISDICTION AND VENUE

16.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Los Angeles, California.

///

///

///

1

**STATEMENT OF FACTS**

2      18.    On January 22, 2023, multiple Los Angeles County Sheriff's deputies

3   responded to the area of Woodbury and Fair Oaks in Altadena for a report of a

4   male threatening people with a metal object.  The deputies located Charles Towns

5   as he crossed the street at the intersection, but for some reason failed to

6   immediately contact him.  Mr. Towns was clearly mentally unavailable and should

7   have been immediately detained. For unknown reasons, multiple deputies just

8   allowed Mr. Towns to walk an entire block from the gas station into a residential

9   area where an older couple was located.  When Mr. Towns reached the midpoint in

10  the block he encountered a male who seemed to be using his cell phone and

11  unaware of the fact that Mr. Towns was standing directly next to him.  Mr. Towns

12  did not attempt to strike, stab or injure him in anyway and the man eventually ran

13  off.  **Still the deputies allowed Mr. Towns to continue walking unfettered**

14  **towards unsuspecting citizens in the next residential block**.

15      Instead, they watched Mr. Towns engage in a physical encounter with an

16  elderly female.  Defendant MORALES opened fire on him causing Mr. Towns to

17  fall and drop the scissors.  The Defendant deputies had multiple opportunities to

18  physically cut off Mr. Towns' the path of travel and establish a perimeter.

19      Defendant **PRENTICE**'s body-cam video shows a literal smoking gun shot

20  from her after she exited her vehicle and entered a crossfire from above and behind

21  Mr. Towns who was on the ground and already disarmed from Defendant

22  MORALES' first shot.

23      Nevertheless but **PRENTICE** still shoots towards her fellow deputies and

24  hits Mr. Towns with gunfire from this reckless crossfire.   A preliminary autopsy

25  summary indicates that a bullet penetrated Mr. Towns abdomen area from top to

26  bottom, travelled just underneath his skin and exited his groin. This is believed to

27  have come from **Defendant Deputy PRENTICE**'s bullet as she is seen to have

28  shot from over Mr. Town's head, top to bottom.

Mr. Town's was ordered by Defendant Deputy MORALES "not to move" **while he was actively being shot from multiple angles**. When Mr. Towns moved out of sheer reaction to being hit with deadly fire, he was punished by Deputy MORALES who resumed shooting. **Defendant Deputy PRENTICE** then came out of the crossfire, around the police unit and continued shooting Mr. Towns at near point blank range even after he fell to the ground again. Defendant Deputy **MORALES** literally had to push her gun down to stop her from shooting more. Both Defendant deputies shot Mr. TOWN's although his empty hands were clearly visible on both body-cam footages. Both Deputies executed him.

Pursuant to California Assembly Bill 1506 (AB 1506), the California Department of Justice is required to investigate all incidents of an officer-involved shooting resulting in the death of an unarmed civilian in the state. The Department of Justice ("DOJ") will investigate & review for potential criminal liability. Defendant Sheriff LUNA **failed to notify** the Department of Justice for full <u>two days</u> but was then completely untruthful in his Press Release which stated that the DOJ was notified and responded to the scene. The DOJ was not notified for a full TWO days in complete violation of AB 1506 which requires **immediate** notification when the law enforcement agency has an incident of an officer-involved shooting resulting in the death of an unarmed civilian. Even if Defendant LUNA believed that Mr. Towns was armed but then disarmed he was still required to notify the DOJ.

19. **The LASD written version:**
LASD Deputy-Involved Shooting (DIS) in the 2100 block of El Sereno Avenue, Altadena (Unincorporated).

The following information is based on facts determined from an investigation into the incident described. The investigation is ongoing, and as witnesses are interviewed, evidence is analyzed, and reports are reviewed, our understanding of the facts may change. The details described below accurately reflect the facts as we currently know them.

On January 22, 2023, at approximately 5:14 PM, deputies assigned to the Altadena Sheriff's Station responded to a call at a gas station on the corner of Fair Oaks Avenue and Woodbury Road. The call was regarding a male chasing and attempting to stab people with a sharp metal object. The male was later identified as 47-year-old Charles Towns.

When deputies arrived at the location, they saw Towns walking south across Woodbury Avenue. The deputies followed Towns in their patrol vehicles as he walked west on Woodbury Road along the south sidewalk. One of the pursuing deputies exited his patrol vehicle and ordered Towns to stop and drop his weapon. Towns did not comply and continued to walk south onto the 2100 block of El Sereno Avenue, where they witnessed him stab an elderly female in her face. Towns, while still armed with the sharp object, was actively attempting to stab another person, at which time a deputy-involved shooting occurred. Towns fell to the ground, got up, and advanced toward deputy personnel as the deputy-involved shooting continued. Towns collapsed at the apron of the driveway, approximately 10 to 12 feet from where he initially fell.

Towns sustained gunshot wounds to his torso. Deputies rendered first aid to Towns until the Los Angeles County Fire Department paramedics arrived. He was pronounced dead at the scene.

There were two civilians injured from stabbing /cutting injuries in this incident. The sharp object, later determined to be scissors, was recovered from the ground in the area where the male originally fell.

Following notification by local authorities, the California Department of Justice's California Police Shooting Investigation Team deployed to the incident scene. Alongside other law enforcement partners, the California Department of Justice is investigating. Once the investigation has been completed, it will be turned over to the California Department of Justice's Special Prosecutions Section within the Criminal Law Division for independent review. More information on the California Department of Justice's roles and responsibilities under AB 1506 is available at: https://oag.ca.gov/ois-incidents.

***UPDATE***

The employees involved in the deputy-involved shooting were identified as Deputy Eliezer Morales, Deputy Clarissa Prentice.

1

**Immediate Cover-up by Defendant Sheriff LUNA and COUNTY**

2    As evidenced by their own Press Release Defendant LUNA and COUNTY

3    immediately set out to deceive the reader.

4    1.)  Defendants said, "Towns fell to the ground, got up, and advanced toward

5    deputy personnel as the deputy-involved shooting continued."

6    Truth of the matter, Mr. Towns was hit by Defendant Morales' first shot and

7    disarmed when he fell (Defendant PRENTICE's body-cam footage clearly shows

8    what looks like scissors on the ground before Mr. Towns attempts to stand). Before

9    he could stand however, Defendant Prentice shoots him from overhead while

10   Defendant MORALES yells for him to stop moving.  MORALES then shoots him

11   again.  Mr. Towns was in a crossfire with no human way to comply with

12   conflicting orders being given to him.

13   2.)  Defendants said, "The sharp object, later determined to be scissors, was

14   recovered from the ground in the area where the male ***originally fell***."

15   The Defendant COUNTY and Sheriff meant to intentionally deceive the reader

16   into believing that somehow Deputies MORALES and PRENTICE did not know

17   Mr. TOWNS was <u>unarmed</u> when they shot him multiple times after his original

18   fall.

19   Deputies then failed to administer first-aid or even attempt lifesaving

20   measures in a timely manner.

21

22   **FIRST CLAIM FOR RELIEF**

23   **Unreasonable Search and Seizure—Excessive Force & Torture**

24   **(42 U.S.C. § 1983)** (Against All Officer Defendants)

25   20.    Plaintiffs repeat and re-allege each and every allegation in paragraphs

26   1 through 19 of this Complaint with the same force and effect as if fully set forth

27   herein.

28   21.    Defendants, and DOES 1-10 , and each of them, joined in and carried out a

mutually supportive conspiracy to deprive Plaintiffs of their rights against unreasonable seizures, and due process guarantees by participating in a mutually supportive, corrupt effort to deny and violate Plaintiffs constitutional rights.

22.     The unjustified killing deprived Mr. TOWNS of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

23.     The excessive use of force by the Defendant DEPUTIES excluding Sheriff LUNA deprived the DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

24.     As a result, DECEDENT suffered extreme pain and suffering and eventually suffered a loss of life and of earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

25.     As a result of the conduct of the Officer Deputies, they are liable for DECEDENT's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

26.     This use of deadly force was excessive and unreasonable under the circumstances. Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

27.     The conduct of the Deputy Defendants were willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive

damages as to the Deputy Defendants.

28.     Plaintiffs seek both survival and wrongful death damages for the violation of DECEDENT's federal and state constitutional rights and applicable laws.

29.     Plaintiffs also seek attorney fees under this claim.

## SECOND CLAIM FOR RELIEF
### Substantive Due Process
### (42 U.S.C. § 1983) (Against Defendant the Officer Defendants)

30.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 29 of this Complaint with the same force and effect as if fully set forth herein.

31.     Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiffs' familial relationship with their father, Mr. TOWNS.

32.     Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiffs' familial relationship with their father, DECEDENT.

33.     DECEDENT had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of his right to life, liberty, or property in such a manner as to shock the conscience.

34.     As a result of the excessive force by the Deputy Defendants, DECEDENT died. Plaintiffs were thereby deprived of their constitutional right of familial relationship with DECEDENT.

35.    The Deputy Defendants, acting under color of state law, thus violated the Fourteenth Amendment rights of Plaintiffs TOWNS, and KNOX to be free from unwarranted interference with their familial relationship with DECEDENT.

36.    The aforementioned actions of the Defendants, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

37.    The Officer Defendants, acting under color of state law, thus violated the Fourteenth Amendment rights of DECEDENT and Plaintiffs.

38.    As a direct and proximate cause of the acts of the Officer Defendants, DECEDENT experienced severe pain and suffering and lost his life and earning capacity. Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

39.    As a result of the conduct of the Deputy Defendants, they are liable for DECEDENT'S injuries, either because they were integral participants in the denial of due process, or because they failed to intervene to prevent these violations.

40.    The conduct of the Deputy Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the Deputy Defendants.

41.    Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT, and seek both survival and wrongful death damages for the violation of both Plaintiffs' and DECEDENT's rights.

42.     Plaintiffs also seek attorney fees under this claim.

## FOURTH CLAIM FOR RELIEF
### *Monell* Allegations
### Municipal Liability for Unconstitutional Custom or Policy
### (42 U.S.C. § 1983) (Against **LUNA**, DOES 1-10 and **COUNTY**)

43.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

### LASD Deputy Gangs

Members of a specific group often have a shared "ink" that symbolizes their membership. In some instances, according to reports, this ink is only granted after a deputy commits an illegal act or violates department protocol to show their loyalty to the group. In other cases, deputies allegedly receive additional markings after fulfilling certain conditions, like committing police brutality or being **involved in a shooting**.

44.     The Defendant DEPUTIES executed Charles TOWNS and deprived him of his right to be judged by a jury of his peers. Defendants VILLANUEVA and COUNTY have nourished and cultivated a gangland culture at the Los Angeles Sheriffs Department where deputies are auditioning to be members of well-know Deputy gangs such as "The Banditos" and the "Executioners" where actually executing someone on duty fulfill the initiation. Defendant VILLANUEVA has thwarted investigations into the gangs, protected the members and denied their existence.

45.     As customary with the Los Angeles Sheriff's Department, Defendant COUNTY, Sheriff LUNA and former Sheriff Alex VILLANUEVA do not discipline for the use of excessive force on people of color. To further aid deputy malfeasance, the COUNTY, and Sheriff LUNA has condoned and ratified policies

that allow officers involved in critical incidents to view patrol camera footage before making a statement.

46.     For some time prior to January 22, 2023 (and continuing to the present date) the individual DEPUTY Defendants, deprived Plaintiffs and DECEDENT of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that, said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and DECEDENT, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as police officers and other personnel, including the DEPUTY Defendants, DOES 1- 10, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written COUNTY police department's policies, including the use of excessive force;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining COUNTY officers, and other personnel, including the deputy Defendants, who Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for violence and the use of excessive force;

(c) By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendant the Officer Defendants, who are police officers of COUNTY;

(d) By failing to discipline COUNTY officers' conduct, including but not limited to, excessive force;

(e) By ratifying the intentional misconduct of Defendants, who are officers

1  of COUNTY;

2  (f) By having and maintaining an unconstitutional policy, custom, and

3  practice of using excessive force, including deadly force, which also is

4  demonstrated by inadequate training regarding these subjects. The policies,

5  customs, and practices of DOES 1- 10, were done with a deliberate indifference to

6  individuals' safety and rights; and

7  (g) By failing to properly investigate claims of unlawful detention and

8  excessive force by COUNTY deputies.

9  47.   The Los Angeles Sheriff's Department has a pattern and practice of

10  using excessive or deadly force on young men of color. As recent as August 2022,

11  Los Angeles Sheriff's deputies pulled over three unarmed Black teenagers on

12  Rosecrans Ave. including JAYSHAWN ALLEN and two minors, for joyriding.

13  (Case #22-cv-09475-KS) . The criminal charges were dismissed and Mr. Allen and

14  the teens initiated a lawsuit because the officers used deadly force on them for no

15  reason whatsoever.

16  48.   Top brass at the LASD  have a long history of refusing to discipline

17  deputies for excessive force on people of color and stonewalling and/ or failing to

18  cooperate with investigations into allegations of excessive force, specifically but

19  not limited to Defendant sheriff LUNA and former Sheriff VILLANUEVA and

20  inquiries by local and federal investigators into deputy gangs including but not

21  limited to "Banditos" and *"Executioners"*

22  49.   Defendants, together with various other officials, whether named or

23  unnamed, had either actual or constructive knowledge of the deficient policies,

24  practices and customs alleged in the paragraphs above. Despite having knowledge

25  as stated above these defendants condoned, tolerated and through actions and

26  inactions thereby ratified such policies. Said defendants also acted with deliberate

27  indifference to the foreseeable effects and consequences of these policies with

28  respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals

1   similarly situated.

2       50.    By perpetrating, sanctioning, tolerating and ratifying the outrageous

3   conduct and other wrongful acts, Defendant LUNA, acted with an intentional,

4   reckless, and callous disregard for the life of DECEDENT, and Plaintiffs'

5   constitutional rights. Defendant LUNA, each of their actions were willful, wanton,

6   oppressive, malicious, fraudulent, and extremely offensive and unconscionable to

7   any person of normal sensibilities.

8       51.    Furthermore, the policies, practices, and customs implemented and

9   maintained and still tolerated by the COUNTY, and Defendant LUNA and

10  unknown Defendants were affirmatively linked to and were a significantly

11  influential force behind the injuries of DECEDENT and Plaintiffs.

12      52.    By reason of the aforementioned acts and omissions of Defendants

13  DOES 1-10, Plaintiffs have suffered loss of love, companionship, affection,

14  comfort, care, society, and future support. Accordingly, Defendants DOES 1-10,

15  each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

16      53.    By reason of the aforementioned policies and practices of Defendants,

17  DECEDENT was severely injured and subjected to pain and suffering and lost his

18  life. Plaintiffs seek wrongful death and survival damages under this claim.

19

20  **FIFTH CAUSE OF ACTION**
   **CONSPIRACY**

21  **(Per 42 U.S.C. Section 1985)**

22      54.    Plaintiffs repeat and re-allege each and every allegation in paragraphs

23  1 through 53 of this Complaint with the same force and effect as if fully set forth

24  herein.

25      55.    Defendants, together with other unknown co-conspirators,   including

26  police supervisory, and command personnel, together reached an   understanding,

27  engaged and continue to engage in a course of conduct, and otherwise jointly acted

28  and conspired among and between themselves to commit unconstitutional   overt

1  acts, including the excessive use of force.    Defendants issued a deceptive Press
2  Release immediately.

3       56.    Because the conspiracy or conspiracies and the overt actions in
4  furtherance thereof were done and continue to be done with the knowledge and
5   purpose of depriving DECEDENT, who is African American, and numerous
6  other African-   American victims of the equal protection of the laws and equal
7  privilege and immunities   under the law, and with racial animus toward the
8  Plaintiff and the other victims of this   racially motivated conspiracy, the
9  Defendants also deprived Plaintiff of his right to   equal protection of the laws
10  under the Fourteenth Amendment, and 42 U.S.C.§1985.

11      57.    Defendants together with other as yet   unnamed Doe co-conspirators,
12  knowing that the above § 1985 conspiracy to deprive   African-Americans of their
13  rights, and having the power, authority and duty to prevent   or aid in preventing
14  the commission of the acts in furtherance of the conspiracy,   neglected and refused
15  to do so, in violation of 42 U.S.C. § l986.

16      58.    As a direct and proximate result of the foregoing, DECEDENT
17  sustained injury   and damage as alleged above.

18
19  **SIXTH CLAIM FOR RELIEF**
**Battery** (Wrongful Death)
20  **(Cal. Govt. Code § 820 and California Common Law)**
21  (Against the Officer Defendants and COUNTY)

22      59.    Plaintiffs repeat and re-allege each and every allegation in paragraphs
23  1 through 76 of this Complaint with the same force and effect as if fully set forth
24  herein.
25
26      60.    Defendant Deputies MORALES and PRENTICE, while working as
27  deputy sheriffs for the LASD, and acting within the course and scope of their
28  employment with the COUNTY, intentionally shot DECEDENT multiple times,

while DECEDENT was on the ground complying with order and again when he attempted to run for his life, thereby using unreasonable and excessive force against him. At the time of the shots, DECEDENT **disarmed** and did not pose an immediate threat of death or serious bodily injury to anyone.

61.    As a result of the actions of Defendant Deputies MORALES and PRENTICE and DOE OFFICERS, DECEDENT suffered severe pain and suffering and visibly died painfully from his injuries. Defendant Deputies MORALES and PRENTICE and DOE OFFICERS had no legal justification for using and maintaining the use of deadly force against the unarmed DECEDENT, and their use of force while carrying out their duties as officers for the COUNTY was an unreasonable and non-privileged use of force.

62.    As a result of their misconduct, Defendant Deputies MORALES and PRENTICE and DOE DEFENDANTS are liable for DECEDENT's injuries, either because they were integral participants in the shooting, or because they failed to intervene to prevent these violations.

63.    As a direct and proximate result of the conduct of Defendant Deputies MORALES and PRENTICE and DOE OFFICERS as alleged above, DECEDENT sustained injuries, endured pain and suffering, eventually died from his injuries, and also lost his earning capacity.

64.    The COUNTY is vicariously liable for the wrongful acts of Defendants Deputies MORALES and PRENTICE and DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

65.    The conduct of Defendant Deputies MORALES and PRENTICE and DOE DEPUTIES was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and DECEDENT, entitling Plaintiffs, individually and as a successor-in- interest to DECEDENT, to an award

of exemplary and punitive damages as to DOE OFFICERS.

66.    Plaintiff brings her claim individually and as a successor in interest to DECEDENT, and seeks both survival and wrongful death damages under this claim. Plaintiffs also seek attorney's fees under this claim.

## SEVENTH CLAIM FOR RELIEF
### Negligence (Wrongful Death)
### (Cal. Govt. Code § 820 and California Common Law)

67.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 84 of this Complaint with the same force and effect as if fully set forth herein.

68.    The actions and inactions of the Defendants, were negligent and reckless, including but not limited to:

(a) the failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against DECEDENT;

(b) the negligent tactics and handling of the situation with DECEDENT, including the use of the electrical control device negligence;

(c) the negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

(d) the failure to provide prompt medical care to DECEDENT;

(e) the negligent handling of evidence and witnesses.

69.    Responsible supervisors failed to discipline officers found to be in violation of using excessive force and therefore emboldening them to use excessive force again in the future.

70.    LUNA and unknown responsible supervisors failed to train, discipline or fire them. Their participation was one of several causal links that led to the death of Charles TOWNS.

71.    As a direct and proximate result of defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to

suffer severe pain and suffering and ultimately died and lost earning capacity. Also as a direct and proximate result of defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also are claiming funeral and burial expenses and a loss of financial support.

72.     COUNTY is vicariously liable for the wrongful acts of the Officer Defendants pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

73.     Plaintiffs bring this claim as a successors-in-interest to DECEDENT, and seek wrongful death damages.

74.     Plaintiffs are seeking wrongful death damages under this claim.

## EIGHTH CAUSE OF ACTION

(Violation of the *BANE* Act Cal. Civil Code § 52.1)

(By All Plaintiffs against all Defendants)

75.     Plaintiffs repeat and re-allege each and every allegation in paragraphs  1 through 74 of this Complaint with the same force and effect as if fully set forth herein.

76.     California Civil Code, Section 52.1 (the *Bane* Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

77.     On information and belief, Defendant Officers and DOE OFFICERS, inclusive, while working for the COUNTY and acting within the course and scope

of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including by shooting him multiple times without justification or excuse, by integrally participating and failing to intervene in the above violence, and by denying him necessary medical care.

78.    When Defendants repeatedly shot Mr. TOWNS while his was unarmed, they interfered with TOWNS' civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

79.    On information and belief, Defendants intentionally and spitefully committed the above acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

80.    On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by Defendants, inclusive were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

81.    Defendants thus successfully interfered with the above civil rights of DECEDENT and Plaintiffs.

82.    The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

83.    COUNTY is vicariously liable for the wrongful acts of Defendants and DOE OFFICERS, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

84.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiffs' rights,

justifying an award of exemplary and punitive damages as to the individual responding Defendants and DOE OFFICERS.

85.     Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. Plaintiffs also seek attorney's fees.

**NINTH CAUSE OF ACTION**
**"TORTS-IN-ESSENCE"**
**(Against Individual Defendant OFFICERS excluding LUNA)**

86.     Plaintiffs restate and incorporate by reference, as though fully set forth herein, the allegations contained in all paragraphs above. Pursuant to CA Gov. Code Section 815.6, which creates a private right of action for the alleged breaches of the various penal code sections listed in this Complaint, the officers Defendants and each of them, owed to Plaintiffs non-consensual duties, and Plaintiffs hereby set forth that the individual Officer Defendants violated the following California Penal Code Sections: 187 (**Murder**), 149 (felonious excessive force by a peace officer), 240 (assault), and 242 (battery)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray, and request entry of judgment in their favor and against Defendants, as follows:

87.     For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

88.     For funeral and burial expenses, and loss of financial support;

89.     For punitive damages against the individual defendants in an   amount to be proven at trial;

90.     For interest;

91.     For reasonable costs of this suit and attorneys' fees; and

92.      For such further other relief as the Court may deem just, proper, and

appropriate.

DATED: 3/3/23                          LAW OFFICES OF CAREE HARPER

                                       /S/ Caree Harper
                                       Attorneys for PLAINTIFFS


## DEMAND FOR JURY TRIAL

All Plaintiffs demand a jury trial.

                                       LAW OFFICES OF CAREE HARPER

                                       **/S/ Caree Harper**

                                       Attorneys for PLAINTIFFS

TOWNS COMPLAINT FOR DAMAGES